UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TINA STEPHENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No: 1:09-cv-140 |
| | ) Edgar/Carter |
| MICHAEL S. ASTRUE, | ) |
| Commissioner of Social Security, | ) ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings (Doc. 8), Defendant's motion for summary judgment (Doc. 10) and Plaintiff's Reply Memorandum (Doc. 12).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 42 years old as of August 26, 2008, the date of the ALJ's decision (Tr. 127), and has a high school diploma (Tr. 22). She previously worked as a sales clerk, machine operator, and most recently as an administrative assistant (Tr. 102). Plaintiff has not worked

since April 2003 (Tr. 184). She has been married three times. She divorced her first husband, who has custody of her daughter; her second husband died in 2003; and she married her current husband in November 2005 (Tr. 184-186). At the time of the hearing, she lived alone with her husband, who was a disabled veteran receiving VA benefits and DIB (Tr. 185-186).

## Applications for Benefits

On June 10, 2004, Plaintiff filed an application for Disability Insurance Benefits (DIB), and on July 23, 2004, filed an application for Supplemental Security Income (SSI), alleging disability as of April 2, 2003, due to fibromyalgia (Tr. 45, 57).[1] The Agency denied Plaintiff's claim initially and upon reconsideration (Tr. 81, 83-87). After appealing, Plaintiff testified at a hearing before an administrative law judge (ALJ) (Tr. 180-196). On December 28, 2006, the ALJ denied Plaintiff's disability application (Tr. 54-64). The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ to obtain supplemental evidence and issue a new decision (Tr. 40-43). After a supplemental hearing (Tr. 197-220), the ALJ denied Plaintiff's claims in a written decision on August 26, 2008 (Tr. 12-23). The Appeals Council denied Plaintiff's request for review (Tr. 5-7). Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For reasons set out in the body of this opinion, I conclude the decision is supported by substantial evidence because the ALJ reasonably weighed all evidence and relied on the testimony of a vocational expert in determining Plaintiff was not disabled.

---

[1] Plaintiff later claimed disability due to pain, headaches, obesity, depression and anxiety, in addition to fibromyalgia (Tr. 18, 79).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)

(citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of August 26, 2008 that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since April 2, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following "severe" impairments under the criteria of SSR 96-3p: obesity, fibromyalgia, dysthymia, and an anxiety disorder not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform unskilled, sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following additional limitations: she can only occasionally perform work at heights, or on ladders or scaffolds; and she can do no work involving the general public or requiring production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on xxxxxxx xx, 1965 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the

claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-23).

## Issues Presented

Plaintiff raises the following issues:

1. The Commissioner erred in assigning the opinion of the claimant's treating physicians, Dr. Ruiz and Dr. Werle, little weight.

2. The Commissioner erred in finding that the claimant could return to sedentary work.

## Review of Relevant Evidence

### Medical Evidence

The record reflects the earliest medical records submitted by Plaintiff are from Dr. J.G. Dudash, M.D., who saw Plaintiff on five occasions between January 3, 2002, and January 24, 2003 (Tr. 127-132). According to Dr. Dudash's records, Plaintiff was on Paxil to treat depression prior to January 3, 2002, but Plaintiff complained of fatigue so Dr. Dudash prescribed Xanax (Tr. 132). Dr. Dudash later recorded Plaintiff "felt ok" on Xanax (Tr. 131). Plaintiff received refills of Xanax until at least September 2002 (Tr. 129-132). Dr. Dudash's records make no mention of symptoms attributable to fibromyalgia and contain no opinions or assessments about Plaintiff's ability to do physical work (Tr. 127-132). Plaintiff's medical

5

records indicate no further visits with Dr. Dudash after January 24, 2003.

On November 9, 2004, more than twenty months after her last visit with Dr. Dudash,[2] Plaintiff visited Dr. Shane Roberts, M.D., complaining of "[a]rms numbness, burning of muscles, muscle pains, [and] swelling in shins". Plaintiff reported numbness in the fingers of her left hand which began nine months before the examination. However, she was not currently seeing any doctors (Tr.133.). She indicated that she had been taking over-the-counter ibuprofen but made no mention of prescribed medication (Tr. 133-134). Dr. Roberts described Plaintiff as a "well-nourished, well-developed female with average intellectual functioning," who had "[n]o difficulty moving from the chair to the exam table" (Tr. 134).

However, Dr. Roberts noted Plaintiff had "[p]ositive trigger points for fibromyalgia at the cervical, trapezius, sciatica, elbows, knees, and wrists" and diagnosed Plaintiff with fibromyalgia, bilateral forearm numbness, and low back pain with an intermittent nerve root impingement. He noted no muscle wasting, no nerve root compression, no muscle weakness and no reflex changes or sensory abnormalities (Tr. 135). He concluded that she could not write legibly, complete a telephone call, dress herself, do household chores independently or shop for groceries without supervision (Tr. 136). On the other hand, Dr. Roberts reported Plaintiff could travel independently by mass transit, take her own medication with supervision, and shop for groceries and household goods with supervision (*Id.*). He noted in one part of his report that Plaintiff "does not drive" (Tr. 134), yet later wrote that she can drive a car but "'[c]an't drive

---

[2] Plaintiff's medical records indicate that she did not visit any medical professional for more than two months before she allegedly became disabled in April 2003. Plaintiff sought no treatment or examinations over the next fourteen months before she submitted her applications for DIB and SSI in June and July of 2004 (Tr. 127, 133).

far'" (Tr. 136). He concluded Plaintiff should be limited to lifting less than 10 pounds, standing and walking for fewer than two out of eight hours, and sitting less than six hours a day (Tr. 135-136).

Dr. Denise Bell, M.D., performed a physical residual functional capacity assessment for Plaintiff following Dr. Roberts' examination (Tr. 137-142). She diagnosed Plaintiff with fibromyalgia and obesity and found Plaintiff could sit (with normal breaks) for approximately six hours and stand or walk for at least two hours in an eight-hour workday (Tr. 137, 138). She also concluded Plaintiff could occasionally lift or carry up to 10 pounds and frequently lift or carry less than 10 pounds (Tr. 138). Dr. Bell's findings were based in part on Dr. Roberts' observations (Tr. 141).

The administrative record contains no other medical records between December 2004 and September 2006, when Dr. William Kenney, Ph.D., performed a psychological examination of Plaintiff (Tr. 143-148). Dr. Kenney remarked Plaintiff's only recorded medical issue was fibromyalgia, but she was not on any medication and had not had a doctor's appointment for several years (Tr. 143). He observed Plaintiff's second husband's death had a "profound effect" on her and that she had anxiety and depression issues stemming from his death (Tr. 144, 145). However, she told Dr. Kenney she had several hobbies including Native American history and genealogy, going to yard sales and dining out once or twice a month. She mentioned she had visited a friend's house four times this year, took a yearly trip to Ohio and grocery shopped a couple of times a month (Tr. 144-145).

Dr. Kenney diagnosed Plaintiff with dysthymia and anxiety disorder (Tr. 145). He determined Plaintiff's anxiety and depression would only moderately affect her ability to interact

7

appropriately with supervisors and co-workers and respond appropriately to changes in a routine work setting, but her condition would have a "marked" effect on her ability to interact appropriately with the public and respond to work pressures (Tr. 148).[3] However, Dr. Kenney concluded Plaintiff's mental impairments had no effect on her ability to understand, remember and carry out detailed instructions, and only moderate effect on her ability to make simple work-related decisions (Tr. 146). Further, Dr. Kenney found that Plaintiff could "manage benefits in [her] own best interest" (Tr. 147).

In the first six months of 2007, Plaintiff made several visits to the UT Family Practice Center where she was treated by Drs. David E. Ruiz, M.D. and Zachary R. Werle, D.O. (Tr. 161-174). During her initial visit, Plaintiff complained of back and leg pain, headaches, anxiety and depression (Tr. 172). The doctors noted her history of fibromyalgia, performed various tests and prescribed Flexeril for her back pain and Zoloft for her depression and anxiety (*Id.*). At her next visit, Plaintiff reported she did not fill her prescription because "she cannot afford her Zoloft," and was therefore prescribed Prozac (Tr. 171). Plaintiff later reported Prozac "somewhat improved" her anxiety and depression issues, and Drs. Ruiz and Werle noted Plaintiff's depression and anxiety were "stable on Prozac" (Tr. 162, 163). The doctors also diagnosed her with hypothyroidism and prescribed Synthroid, which she took "without any problems" (Tr. 163). During her last visit on June 18, 2007, Drs. Ruiz and Werle continued her Synthroid and Prozac prescriptions, again noting Plaintiff was "stable" on Prozac (Tr. 161). None of the medical records and reports from Drs. Ruiz and Werle contain any opinions or assessments about

---

[3] Dr. Kenny used a worksheet that had the following "restriction" choices for these activities: (1) none, (2) slight, (3) moderate, (4) marked, and (5) extreme (Tr. 148).

Plaintiff's ability to do physical work (Tr. 161-174).

In May 2008, after nearly a year with no treatment, Plaintiff underwent another physical examination with Dr. Edward Johnson, M.D. (Tr. 149-159). She complained of muscle pain and a burning sensation near her spine while sitting, and indicated that "[s]he has not had any real treatment or evaluation and has not used any medication since October 2007" (Tr. 150). Dr. Johnson stated that there were "no abnormal physical findings identified other than tenderness throughout the paraspinal muscles" and "poor muscle tone throughout" (Tr. 152). He concluded that Plaintiff could perform the following functions and activities:

- Lift and carry up to 20 lbs. frequently (between one-third and two-thirds of the time) and up to 50 lbs. occasionally (up to one-third of the time) (Tr. 154)
- Sit, stand and walk for all eight hours of an eight-hour work day in no more than four hour increments (Tr. 155)
- Reach, handle, feel, push and pull with both hands without limitation (Tr. 156)
- Climb stairs and ramps, stoop, kneel, crouch and crawl frequently (Tr. 157)
- Climb ladders or scaffolds occasionally (Tr. 157)
- Tolerate moderate noise and operate a motor vehicle continuously (Tr. 158)
- Prepare meals, travel and use public transportation alone, shop, and care for personal hygiene (Tr. 159)

(Tr. 154-159). The administrative transcript contains no more medical records since May 2008.

Analysis

1. Did the Commissioner err in assigning the opinion of the claimant's treating physicians, Dr. Ruiz and Dr. Werle, little weight?

It is well settled that opinions of treating physicians, because of their longitudinal history of caring for patients, are entitled to great weight and are generally entitled to greater weight than contrary opinions of consulting physicians who have examined plaintiffs only once. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529-30 (6th Cir. 1997); *Ferris v. Secretary of Health and Human Services*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 776 F.2d 431, 435 (6th Cir. 1985). *See also*, 20 C.F.R. § 404.1527(d)(2) (giving more weight to the opinions of treating sources generally). 20 C.F.R. § 404.1527(d)(2) sets forth factors to be considered: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.

However, the Commissioner is not bound by a treating physician's assessment in all situations. The weight to be given the physician's opinion depends on the extent to which it is supported by objective medical signs and laboratory findings and to the extent that it is consistent with the record as a whole. 20 C.F.R. §§404.1527(d), 416.927(d); *accord Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The Commissioner may reject unsupported opinions or opinions inconsistent with other substantial evidence in the record and resolve conflicts in the evidence. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). *See also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Furthermore, physicians' opinions about the ultimate issue of disability are entitled to no

particular weight; rather, this issue is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (The Commissioner is responsible for making the determination about whether a claimant meets the statutory definition of disability); Social Security Ruling (SSR) 96-5p.

The treating physician rule which gives greater and sometimes controlling weight to the treating physician is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once or simply reviewed the medical evidence. *See Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. *See* 20 C.F.R. § 404.1527(d)(3); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). A treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-31 (6th Cir. 1997) (stating that treating physicians' opinions are to be accepted when they are consistent with the evidence). The ALJ is authorized to reject the opinion of a treating physician if the treating physician's opinion is inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

Plaintiff argues that the ALJ erred by failing to give the opinions of Drs. Ruiz and Werle
11

controlling weight as treating sources or at least greater weight. However Drs. Ruiz and Werle, as well as Dr. Dudash, did not provide functional assessments regarding Plaintiff's work capacity. The Commissioner is under no duty to grant controlling weight to a physician's observations when there is no medical opinion to be weighed. *See Watts v. Comm'r of Soc. Sec.*, No. 05-6237, 2006 WL 1208065 at *4 (6th Cir. May 1, 2006) ("[N]one of Watts's treating doctors . . . made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence."); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007). Drs. Ruiz, Werle and Dudash described Plaintiff's symptoms, diagnosed her impairments, made exercise recommendations and prescriptions, and ran lab tests, but included no opinions or assessments as to Plaintiff's ability to perform any work-related activities (Tr. 127-132, 160-174). To the extent Drs. Ruiz, Werle and Dudash provided objective medical findings about Plaintiff's medical condition, the ALJ accounted for those findings in his limited RFC finding.

The burden rests on the Plaintiff to provide a complete record to allow the Commissioner to make a disability determination. 20 C.F.R. §§ 404.1512, 416.912; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). As the ALJ noted, Plaintiff's medical records were sparse and Plaintiff went significant periods without seeing doctors and taking prescribed medication (Tr. 21, 188, 190, 206-207). "[W]hen a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, No. 02-5604, 2004 WL 232242 at *4 (6th Cir. Feb. 3, 2004). According to Plaintiff's medical records, she went approximately twenty months in 2003 and

2004 without any doctor visits (Tr. 127-136). Between January 3, 2003, and January 8, 2007, Plaintiff only had one physical exam and one psychological exam (Tr. 133-148).

Although Plaintiff's failure to seek treatment should not be a "determinative factor," there is no evidence that the ALJ considered it determinative. Based on the medical records, the ALJ found that Plaintiff's impairments were "severe" (Tr. 17). Plaintiff implied that she could not afford health insurance or medication, but she revealed the real reason she did not seek medical treatment was because of her distrust for doctors (Tr. 190) and she "gave up" on her medication only because of challenges in renewing her prescription over the phone (Tr. 206-207). The ALJ could properly considered this and other evidence in assessing Plaintiff's credibility.

The ALJ assigned great weight to the opinion of Dr. Kenney (Tr. 19-20). He agreed with Dr. Kenney's prescribed "marked" restrictions on Plaintiff's capacity, concluding "that the claimant should do no work involving the general public, because in a work setting, public contact would undoubtedly cause the claimant undue stress" (Tr. 19). The ALJ noted "Dr. Kenney's report gives no indication the claimant has difficulty remembering information or carrying out simple, routine tasks in a satisfactory manner," and thus "the claimant would be able to perform unskilled job tasks" (Tr. 19-20).[4]

The ALJ also gave weight to Dr. Johnson's consultative examination assessments (Tr. 20-21). He discussed Dr. Johnson's conclusion "claimant could perform a range of light work

---

[4] Plaintiff made no argument that the ALJ erred in assessing Dr. Kenney's records. Thus, Plaintiff waived any such challenge as well as any other argument not specified in Plaintiff's brief. *See U.S. v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004) ("issues adverted to [on appeal] in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . .") (internal citations omitted); *Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260, 265 (6th Cir. 1992).

involving only occasional work at heights [or] on ladders or scaffolds" and used some of Dr. Johnson's "nonexertional limitations" (Tr. 21). He also included Dr. Johnson's observation of Plaintiff's "tenderness throughout the paraspinal muscles and poor muscle tone" in discussing her physical impairments (Tr. 21).

In addition, the ALJ considered and gave significant weight to Dr. Roberts' consultative examination results (Tr. 20-21). He noted Dr. Roberts' assessment of various symptoms and positive trigger points for fibromyalgia in determining Plaintiff's physical impairments (Tr. 21). He gave Dr. Roberts' assessment partial weight, together with certain parts of Dr. Johnson's nonexertional limitation findings, in determining Plaintiff is limited to sedentary work involving only occasional work at heights, ladders and scaffolds (*Id.*). The ALJ limited the weight given to certain aspects of Dr. Roberts' reports, explaining that Dr. Roberts had a limited evaluation of Plaintiff and his reports contained several inconsistencies (*Id.*). In the end, Plaintiff's RFC (*sedentary* work), as determined by the ALJ (Tr. 17), is largely consistent with Dr. Roberts' assessment of her physical and work capacity (Tr. 135-136).[5] (By contrast, Dr. Johnson concluded that Plaintiff could perform *light*, not sedentary, work (Tr. 154-159).)

As stated above, the Commissioner is not bound by a treating physician's assessment in all situations. The weight to be given the physician's opinion depends on the extent to which it is

---

[5] Certain of Dr. Roberts' assessments are slightly different from the Commissioner's description of sedentary work. For example, Social Security Ruling 96-9p states that, "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for *approximately* 6 hours of an 8-hour workday . . ." SSR 96-9p (emphasis supplied). Dr. Roberts, however, concluded that Plaintiff is able to "[s]it with normal breaks for a total of *less than* six hours of an eight-hour work day" (Tr. 136) (emphasis supplied). To the extent that Dr. Roberts' assessment did not match the description for a full range of sedentary work, the ALJ reasonably rejected that portion of Dr. Roberts' assessment, based on conflicting evidence in the record (Tr. 21).

supported by objective medical signs and laboratory findings and to the extent that it is consistent with the record as a whole. 20 C.F.R. §§404.1527(d), 416.927(d); *accord Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The Commissioner may reject unsupported opinions or opinions inconsistent with other substantial evidence in the record and resolve conflicts in the evidence. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). *See also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Furthermore, physicians' opinions about the ultimate issue of disability are entitled to no particular weight; rather, this issue is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (The Commissioner is responsible for making the determination about whether a claimant meets the statutory definition of disability); Social Security Ruling (SSR) 96-5p. In this case, I conclude the ALJ had a reasonable basis to reject the disabling limitations of these physicians. The ALJ was essentially weighing the conflicting opinions of various physicians.

      Finally, in resolving the issue of whether the ALJ's final determination is supported by substantial evidence, the decision does not turn on whether Plaintiff or the reviewing Court agrees with the ALJ's findings. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts."). I conclude there is substantial evidence to support the ALJ's decision as to the weight given to the physicians of record.

2. Did the Commissioner err in finding that the claimant could return to sedentary work?

The ALJ appropriately weighed all evidence in determining Plaintiff's ability to work. *See Foster v. Bowen*, 853 F.2d 483, 489-90 (6th Cir. 1988) ("The determination of [RFC] involves consideration . . . of other relevant evidence, such as reports of the individual's activities of daily living . . .") The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [of Plaintiff's impairments] are not credible to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 18).

Plaintiff argues that had the ALJ accepted Dr. Roberts' assessment (and Drs. Ruiz and Werle's exam results) as controlling, it would have been "error to find that she can return to full time sedentary work" (Plaintiff's Mem. at 8-9). Plaintiff does not contend that the jobs mentioned by the vocational expert could not be performed by someone capable of sedentary work. Plaintiff is essentially arguing the ALJ assigned the wrong RFC to her; that she cannot perform full-time sedentary work because of her impairments and Dr. Roberts' findings regarding her ability to work (*Id.* at 10-11). As explained above, the ALJ properly weighed *all* evidence and incorporated each doctor's findings appropriately in his decision. *See* disc. *supra* at 11-12. He detailed why he limited the impact of Dr. Roberts' consultative physical assessments on his findings and why Dr. Kenney's findings regarding Plaintiff's mental impairments did not prevent her from performing sedentary work with prescribed limitations (Tr. 18-21).

Since the ALJ determined Plaintiff could perform sedentary work, but not at full range, the ALJ relied on a vocational expert's testimony who identified three representative examples of jobs Plaintiff could perform (Tr. 213). The ALJ complied with applicable rules by asking the vocational expert whether her testimony was consistent with the *Dictionary of Occupational*

*Titles* (*see* SSR 00-4p), and the expert answered affirmatively (Tr. 213-214). Plaintiff did not challenge the accuracy of the vocational expert's testimony, and the ALJ had no duty to "conduct an independent investigation into the testimony" of the vocational expert to verify its accuracy. *Martin v. Comm'r of Soc. Sec.*, No. 04-4551, 2006 WL 509393 at *5 (6th Cir. Mar. 1, 2006). Thus any related claims are waived. *Demjanjuk*, 367 F.3d at 638.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for judgment on the pleadings (Doc. 8) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 10) be GRANTED.

(3) The case be DISMISSED. [6]

Dated: June 28, 2010         s/William B. Mitchell Carter
                             UNITED STATES MAGISTRATE JUDGE

---

[6]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).