UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TINA STEPHENS, )
 )
    Plaintiff, )
 )
v. ) Case No. 1:09-cv-140
 ) Judge Edgar
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    Defendant. )

**MEMORANDUM AND ORDER**

Plaintiff Tina Stephens ("Stephens") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final administrative decision of the Commissioner of Social Security denying her a period of disability, disability insurance benefits, and supplemental security income (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. Stephens has not worked since April 2003. She claims disability due to fibromyalgia, pain, headaches, obesity, depression, and anxiety. Stephens was 42 years old as of August 26, 2008, the date of the Administrative Law Judge's decision. She previously worked as a sales clerk, machine operator, and most recently as an administrative assistant.

On June 28, 2010, Magistrate Judge Carter submitted his report and recommendation. [Doc. No. 13]. The Magistrate Judge determined that there is substantial evidence to support the findings of the Administrative Law Judge (ALJ) and the Commissioner's decision. It is recommended that: (1) plaintiff Stephens' motion for judgment on the pleadings [Doc. No. 8] be denied; (2) the

defendant's motion for summary judgment [Doc. No. 10] be granted under Fed. R. Civ. P. 56; (3) the plaintiff's complaint be dismissed with prejudice; and (4) the administrative decision of the Commissioner of Social Security be affirmed.

Plaintiff Stephens objects to the Magistrate Judge's report and recommendation [Doc. No. 14] and the defendant opposes the objections. [Doc. No. 17]. After reviewing the record *de novo*, the Court concludes that the plaintiff's objections are **DENIED**. The Court accepts and adopts the report and recommendation.

**I.      Standard of Review**

Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to disability insurance benefits if he or she: (1) is insured for disability benefits; (2) has not attained retirement age; (3) has filed an application or claim for disability insurance benefits; and (4) is under a disability. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997).

42 U.S.C. § 423(d)(1)(A) defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." If Stephens meets her burden of making out a *prima facie* claim that she cannot return to her former occupation, the burden shifts to the Commissioner to show there is some work in the national economy which Stephens can perform considering her age, education, and work experience. 42 U.S.C. § 423(d)(2) provides in part:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

> whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

To determine whether a claimant is disabled, the ALJ is required to follow a five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a). These five steps are:

(1) If the claimant is doing substantial gainful activity, he is not disabled.

(2) If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and the impairment meets or equals a listed impairment, the claimant is presumed to have a disability without further inquiry.

(4) If the impairment does not prevent the claimant from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment prevents the claimant from doing his past relevant work, if other work exists in the national economy that accommodates the claimant's residual functional capacity and vocational factors (age, education, work skills, etc.), then the claimant is not disabled.

*Cruse v. Commissioner of Social Security,* 502 F.3d 532, 540 (6th Cir. 2007); *Jones*, 336 F.3d at 474; *Walters*, 127 F.3d at 529. Claimant Stephens bears the burden of proof at steps one through four. The burden of proof shifts to the Commissioner at Step Five. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Jones*, 336 F.3d at 474; *Walters*, 127 F.3d at 529;

*Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990).

To establish that she has a disability under the Social Security Act, Stephens is required to show that she is unable to engage in any substantial gainful activity. 42 U.S.C. § 423(a) and (d)(1)(A); *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Cohen v. Secretary of Dept. Of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). Stephens has the ultimate burden of proving that she has a disability. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Preslar*, 14 F.3d at 1110; *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1028 (6th Cir. 1990).

Judicial review by this Court is limited to determining whether the ALJ's findings of fact are supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Warner,* 375 F.3d at 390; *Jones*, 336 F.3d at 474; *Walters*, 127 F.3d at 528; *Key*, 109, F.3d at 273; *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). 42 U.S.C. § 405(g) provides that the Commissioner's findings as to any fact shall be conclusive if they are supported by substantial evidence. The term "substantial evidence" means more than a mere scintilla of evidence, but less than a preponderance of the evidence. *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Warner,* 375 F.3d at 390; *Jones*, 336 F.3d at 475; *Bell*, 105 F.3d at 245; *Garcia*, 46 F.3d at 555; *Moon*, 923 F.2d at 1181; *Tyra*, 896 F.2d at 1028; *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988).

If the Commissioner's findings of fact are supported by substantial evidence in the record,

then those findings must stand and cannot be reversed or disturbed by the Court, even if the Court might resolve the disputed issues of fact differently. *Moon*, 923 F.2d at 1181; *Tyra*, 896 F.2d at 1028; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). The Court must defer to the ALJ's findings and the Commissioner's decision even if there is substantial evidence that would have also supported different or opposite findings, so long as substantial evidence supports the findings and conclusions reached by the ALJ. *Jones*, 336 F.3d at 475; *Key*, 109 F.3d at 273; *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## II.  ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law. (Tr. 17-23)

1. Stephens meets the insured status requirements of the Social Security Act.

2. Stephens has not engaged in substantial gainful employment activity since April 2, 2003, the alleged date of the onset of her disability.

3. Stephens has the severe impairments of obesity, fibromyalgia, dysthymia, and an anxiety disorder.

4. Stephens does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. Stephens has the residual functional capacity to perform unskilled, sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: she can only occasionally perform work at heights, or on ladders or scaffolds; and she can do no work involving the general public or requiring

production quotas. To the extent that Stephens alleged she has greater restrictions, the ALJ found that her subjective complaints lacked objective supporting data in the and were not credible.

6. Stephens is unable to perform any past relevant work.

7. Stephens was born on October 19, 1965, and was 37 years old on the alleged date of her onset of disability.

8. Stephens has at least a high school education and is able to communicate in English.

9. The transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Stephens is "not disabled," whether or not Stephens has any transferrable job skills.

10. Considering Stephens' age, education, work, experience, and residual functional capacity to perform unskilled, sedentary work with certain additional limitations, there are jobs that exist in the national economy that Stephens can perform. 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966.

11. Stephens has not been under a disability, as defined in the Social Security Act, from April 2, 2003, through the date of the ALJ's decision on August 26, 2008.

This lawsuit focuses on the ALJ's No. 10 finding that considering Stephens' age, education, work, experience, and residual functional capacity to perform unskilled, sedentary work with certain additional limitations, there are a significant number of jobs existing in the national economy that she can perform. With regard to this finding, the ALJ states the following in his decision:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work

> has been impeded by additional limitations. To determine the extent to
> which these limitations erode the unskilled sedentary occupational base,
> I asked the vocational expert at the hearing to assume the claimant's
> vocational factors, and that the claimant has the residual functional
> capacity to perform unskilled, sedentary work as defined in 20 C.F.R.
> 404.1567(a) and 416.967(a), with the following additional limitations: she
> can only occasionally perform work at heights, or on ladders or scaffolds;
> and she can do no work involving the general public or requiring production
> quotas. The vocational expert was able to identify the following represen-
> tative examples of entry level jobs in the regional economy (within a 100
> mile radius) and in the national economy, respectively, which the claimant
> could perform based on this hypothetical: office clerk (1000 and 75,000
> jobs), information clerk (700 and 250,000 jobs), and order clerk (5000 and
> 70,000 jobs).
>
> Based on the testimony of the vocational expert, I conclude that, consider-
> ing the claimant's age, education, work experience, and residual functional
> capacity, the claimant has been capable of making a successful adjustment
> to other work that exists in significant numbers in the national economy.
> If the claimant's testimony were credible, according to the vocational
> expert, there would be no jobs which the claimant would be able to
> perform. However, for the reasons stated I do not consider the claimant's
> testimony credible in its entirety. A finding of "not disabled" is therefore
> appropriate under the framework of the above-cited rule.

[Tr. 22-23].

20 C.F.R. §§ 404.1567(a) and 416.967(a) provide the following definition for the term "sedentary work" concerning physical exertion requirements:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one which involves
> sitting, a certain amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

Social Security Ruling 96-9p provides that in order to perform a full range of sedentary work, an individual must be able to remain in a sitting position for approximately six hours in an eight-hour workday, and limits walking and standing to no more than two hours in an eight-hour

7

workday. The ALJ found that Stephens can perform unskilled, sedentary work with additional limitations: she can only occasionally perform work at heights, or on ladders or scaffolds; and she can do no work involving the general public or requiring production quotas. Since the ALJ determined that Stephens can perform sedentary work, but not at full range, the ALJ properly relied on a vocational expert's testimony that jobs exist in the national economy which Stephens can perform.

## III. First Objection

Stephens objects to the Magistrate Judge's finding that the ALJ gave appropriate weight to the opinions and records of her treating physicians. The District Judge agrees with the report and recommendation, and finds that the ALJ gave appropriate weight to the medical opinions and records of all physicians including treating physicians.

Generally, the opinions of treating physicians are given substantial, if not controlling, deference. *Warner,* 375 F.3d at 390; *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2). The opinions of treating physicians are only given such deference when supported by objective medical evidence. *Warner,* 375 F.3d at 390; *Jones*, 336 F.3d at 477. The determination of disability is ultimately the prerogative of the Commissioner of Social Security, not the treating physicians. *Warner,* 375 F.3d at 390; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

### A. Dr. Kenney's Report

Stephens argues that the ALJ ignored Dr. William Kenney's opinion that she had "marked" restrictions in dealing with the public. This argument fails. Stephens' contention that the ALJ ignored or failed to give appropriate weight to Dr. Kenney's opinion that she had "marked"

8

restrictions in dealing with the public is not supported by the record.

Dr. Kenney, a psychological consultative examiner, performed a psychological examination of Stephens. [Tr. 143-148]. Dr. Kenney noted that Stephens' only medical issue at that time was fibromyalgia, but she was not taking any medication and had not had a doctor's appointment for several years. [Tr. 143]. Dr. Kenney diagnosed Stephens with dysthymia and anxiety disorder. [Tr. 145]. Stephens suffered from anxiety and depression as a result of her second husband's death

When conducting the psychological examination, Dr. Kenney used a worksheet that had five choices for restrictions on activities: (1) none; (2) slight; (3) moderate; (4) marked; and (5) extreme. [Tr. 148]. Dr. Kenney determined that Stephens' anxiety and depression would only moderately affect her ability to interact appropriately with supervisors and co-workers, and to respond appropriately to changes in a routine work setting. Dr. Kenney concluded that Stephens' anxiety and depression would have a "marked" effect on her ability to interact appropriately with the public and respond to work pressures. [Tr. 148]. Dr. Kenney found that Stephens' mental impairments had no effect on her ability to understand, remember, and carry out detailed instructions; and only had a moderate effect on her ability to make simple work-related decisions. [Tr. 146].

The ALJ assigned substantial weight to Dr. Kenney's report and opinions. [Tr. 19-20]. The ALJ agreed with Dr. Kenney's opinion that there are "marked" restrictions on Stephens' ability to interact with the public. The ALJ found "that the claimant should do no work involving the general public, because in a work setting, public contact would undoubtedly cause the claimant undue stress." [Tr. 19]. The ALJ further said: "Dr. Kenney's report gives no indication the claimant has difficulty remembering information or carrying out simple, routine tasks in a satisfactory manner," and thus "the claimant would be able to perform unskilled job tasks." [Tr. 19-20].

9

In the report and recommendation, the Magistrate Judge correctly summarizes the record and explains that the ALJ assigned great weight to Dr. Kenney's opinion. [Doc. No. 13, p. 13]. Stephens' argument to the contrary and her objection to the report and recommendation on this point are frivolous.

Moreover, Stephens did not raise this particular argument about the ALJ's review of Dr. Kenney's report and opinion until after the Magistrate Judge issued the report and recommendation. When Stephens filed her motion for judgment on the pleadings and supporting brief [Doc. Nos. 8, 9], she did not raise any argument that the ALJ erred in assessing Dr. Kenney's opinion and the ALJ ignored Dr. Kenney's opinion that Stephens had marked restrictions in dealing with the public. The first time that Stephens ever raised this argument is in her objections to the report and recommendation.

If Stephens desired to timely raise the argument that the ALJ did not give appropriate weight to Dr. Kenney's opinion, she should have raised it in her motion for judgment on the pleadings which would have allowed the Magistrate Judge an opportunity to more fully address the issue more fully in the report and recommendation. The Magistrate Judge in footnote 4 on page 13 of the report and recommendation states that Stephens made no argument that the ALJ erred in assessing Dr. Kenney's records and thus Stephens waived any such challenge. In any event, the record demonstrates that the ALJ gave appropriate weight to Dr. Kenney's opinion that Stephens had "marked" restrictions in dealing with the public.

For these reasons, Stephens' objection to the report and recommendation must be denied.

**B.     Medical Opinions of Dr. David Ruiz and Dr. Zachary Werle**

Stephens next argues that the ALJ ignored or gave insufficient weight to the medical

10

opinions of two treating physicians, Dr. David Ruiz and Dr. Zachary Werle, when they opined that Stephens suffers from constant and persistent back pain, with minimal relief from medications, and further suffers from persistent fibromyalgia pain including headaches and muscle spasms.

This argument fails. The Magistrate Judge thoroughly reviewed the record on this issue and correctly determined that the ALJ gave appropriate weight to the opinions of treating physicians Ruiz and Werle. The problem here is that Dr. Ruiz and Dr. Werle never provided any functional assessments or opinions of Stephens' work capacity. [Report and Recommendation, Doc. No. 13 pp. 11-12]. Dr. Ruiz and Dr. Werle described the plaintiff's symptoms, conducted lab tests, diagnosed her impairments, recommended exercises, and prescribed medications, but they did not include any assessments and opinions regarding the ability or functional capacity of Stephens to perform work-related activities. [Tr. 161-174].

The ALJ and the Commissioner of Social Security are under no duty to give controlling weight to a treating physician's observations when there is no medical opinion to be weighed. *Watts v. Commissioner of Social Security*, 179 Fed. Appx. 290, 294 (6th Cir. 2006) (No treating physicians made a detailed functional capacity analysis, which leaves the functional capacity forms from the medical reviewers as the best evidence); *see also Bowen v. Commissioner of Social Security*, 478 F.3d 742, 749 (6th Cir. 2007). To the extent that Dr. Ruiz and Dr. Werle provided objective medical findings concerning Stephens' medical condition, the ALJ appropriately gave consideration to and accounted for those findings in the ALJ's medical findings with regard to Stephens' residual functional capacity.

On this issue the Court agrees with the findings of fact and conclusions of law set forth in the Magistrate Judge's report and recommendation. This objection to the report and

11

recommendation is denied.

        **C.**      **Ability to Perform Sedentary Work**

Stephens contends that her physical restrictions, as indicated by the medical records, preclude her from performing any sedentary work as she would have to stand or sit for extended periods of time, maintain concentration, and follow instructions. Stephens argues that her combination of physical and mental impairments entirely preclude her from being able to perform work in any sedentary occupation.

This argument fails. The record shows that every treating, examining, or reviewing physician who actually offered an opinion on Stephens' functional capacity and ability to perform work determined that her impairments and physical restrictions do not preclude her from performing a limited range of sedentary work.

Stephens was treated by Dr. Ruiz and Dr. Werle during the first six months of 2007. The last time that Stephens visited the offices of Dr. Ruiz and Dr. Werle for medical treatment was on June 18, 2007. In May 2008, after almost one year without treatment from a physician, Stephens underwent a physical examination by Dr. Edward Johnson. [Tr. 149-159]. Dr. Johnson's records reflect that Stephens complained of muscle pain and a burning sensation near her spine while sitting. Stephens indicated that she had not had any medical treatment or evaluation and had not used any medication since October 2007. [Tr. 150].

After an examination, Dr. Johnson found that there were "no abnormal physical findings identified other than tenderness throughout the paraspinal muscles" and "poor muscle tone throughout." [Tr. 152]. Dr. Johnson concluded that Stephens could perform a limited range of light work including the following functions and activities:

1. Lift and carry up to 20 lbs. frequently (between one-third and two-thirds of the time), and lift and carry up to 50 lbs. occasionally (up to one-third of the time).

2. Sit, stand, and walk for all eight hours of an eight-hour work day in no more than four hour increments.

3. Reach, handle, feel, push and pull with both hands without limitation.

4. Climb stairs and ramps, stoop, kneel, crouch and crawl frequently.

5. Climb ladders or scaffolds occasionally.

6. Tolerate moderate noise and operate a motor vehicle continuously.

7. Prepare meals, travel, and use public transportation alone, shop, and care for her personal hygiene.

[Tr. 145-159]. Dr. Johnson's report and opinion fully support the ALJ's finding that Stephens is capable of performing sedentary work.

As discussed *supra*, Dr. Kenney, a psychologist and consultative examiner, found that Stephens' mental impairments have no effect on her ability to understand, remember, and carry out detailed work instructions, and only a moderate effect on her ability to make simple work-related decisions. [Tr. 146]. Dr. Denise Bell, a Social Security agency physician who reviewed Stephens' medical records, and Dr. Shane Roberts, another treating physician, found that Stephens could perform a limited range of sedentary work.

The ALJ considered all of these medical opinions and assigned them appropriate weight consistent with the totality of the record. Based on the record as a whole, the ALJ reasonably found that Stephens has the residual functional capacity to perform unskilled, sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: she can only

occasionally perform work at heights, or on ladders or scaffolds; and she can no work involving the general public or requiring production quotas.

After reviewing the entire record *de novo*, the Court agrees with the Magistrate Judge's report and recommendation. For the reasons expressed in the report and recommendation, the Court concludes that the finding of the ALJ that Stephens has the residual functional capacity to perform unskilled, sedentary work with these additional limitations is supported by substantial evidence and must be affirmed. Stephens' objection to the report and recommendation is denied.

**IV.     Second Objection**

Stephens' next objection is that the Magistrate Judge erred in determining that substantial evidence supports the ALJ's finding that she has the residual functional capacity to perform unskilled, sedentary jobs which exist in significant numbers in the national economy. Stephens argues that based on her medical problems and impairments or limitations, she is unable to perform the duties required of any sedentary jobs.

This argument fails. The ALJ appropriately weighed all of the evidence in determining Stephens' ability to work.

The ALJ found that Stephens' subjective complaints and allegations concerning the intensity, persistence, and limiting effect of her symptoms or impairments are not credible to the extent that they are inconsistent with the residual functional capacity assessment. [Tr. 18]. The ALJ is not required to accept Stephens' subjective complaints about pain and her physical and mental ailments. The ALJ may consider her credibility when making a determination of disability. *Cruse,* 502 F.3d at 542; *Jones*, 336 F.3d at 475; *Walters*, 127 F.3d at 531. An ALJ's credibility determinations about a claimant are given great weight since the ALJ is charged with observing the claimant's demeanor

and credibility. However, the ALJ's credibility determinations must also be supported by substantial evidence. *Cruse,* 502 F.3d at 542; *Warner,* 375 F.3d at 392; *Walters*, 127 F.3d at 531. Discounting a claimant's credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, the claimant's testimony, and other evidence. *Cruse,* 502 F.3d at 542; *Warner,* 375 F.3d at 392; *Walters*, 127 F.3d at 531; *Bradley*, 862 F.2d at 1227. In this case, the ALJ's determinations about Stephens' credibility are supported by substantial evidence and must be given great weight by this Court.

Stephens creates confusion by citing *Preston v. Secretary of H.H.S.*, 775 F.2d 495, 498 (6th Cir. 1985). This case citation is incorrect. The Court infers that Stephens actually intends to cite and rely on two Sixth Circuit cases: *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 498-99 (6th Cir. 1985); and *Preston v. Secretary of Secretary of Health & Human Services*, 854 F.2d 815, 819 (6th Cir. 1988).

In *Preston*, 854 F.2d at 819, the Sixth Circuit states that the "concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." (Quoting *Wages*, 755 F.2d at 497); *see also Howse v. Heckler*, 782 F.2d 626, 628 (6th Cir. 1986). *Preston* held that a Social Security clamant suffering from severe fibrositis could not perform sedentary work because she could not maintain any one position, sitting or standing, for any significant length of time. *Preston*, 854 F.2d at 819.

Stephens cites *Wages* and *Preston* for the proposition that sedentary work requires the ability to sit for extended periods of time and is precluded by impairments which require a claimant to alternate sitting and standing. Stephens contends that Dr. Ruiz and Dr. Werle have documented that

15

she suffers from chronic pain that can be severe at times, inhibits her from standing or sitting for extended time periods, and decreases her ability to maintain concentration and follow instructions. Stephens argues that based on the precedent established by *Wages* and *Preston*, her physical and mental impairments indicated in the medical records, especially the records of treating physicians Dr. Ruiz and Dr. Werle, preclude her from having the ability to perform any sedentary work since she incapable of sitting or standing for extended periods of time, maintaining mental concentration, and following an employer's instructions.

The Court concludes that this argument is without merit. Although a sedentary job involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are occasionally required. 20 C.F.R. §§ 404.1567(a) and 416.967(a). There is substantial evidence supporting the ALJ's finding that Stephens has the residual functional capacity to perform sedentary jobs with certain additional limitations. Unlike the claimant in *Preston* who was severely restricted from maintaining any one position – sitting or standing – for any significant length of time, Stephens at most is only moderately restricted. *See Push v. Secretary of Secretary of Health & Human Services*, 865 F.2d 260 (Table, text in 1988 WL 128772, \*\* 2-3 (6th Cir. Dec. 5, 1988)). There is substantial evidence to support a finding that Stephens is able to maintain a sitting position for a significant amount of time, and that she can occasionally stand and walk during an eight-hour workday. For example, Dr. Johnson opined that Stephens can sit, stand, and walk for all eight hours of an eight-hour work day in no more than four hour increments.

Stephens exaggerates the medical opinions and reports prepared by Dr. Ruiz and Dr. Werle concerning her subjective allegations of chronic pain. The key point here is that Dr. Ruiz and Dr.

16

Werle never made a functional assessment and never expressed a medical opinion concerning Stephens' work capacity and any limits or restrictions on her ability to sit, stand, and walk during a regular eight-hour work day. Dr. Ruiz and Dr. Werle never opined that Stephens is unable to perform sedentary work. Dr. Ruiz and Dr. Werle never opined that Stephens is incapable of sitting or standing in one position for a significant period of time, or that she is unable to maintain mental concentration and follow an employer's instructions.

Stephens misunderstands and seeks to misapply the holding in *Wages*, 755 F.2d 495. In *Wages*, the ALJ found that claimant Wages required a sit/stand option and ultimately concluded that the claimant could perform sedentary work. The ALJ in *Wages* erred by relying solely upon and mechanically applying the Medical Vocational Guidelines, also known as "the grid," rather than obtaining testimony from a vocational expert. In the absence of testimony from a vocational expert, the record did not contain substantial evidence that claimant Wages could perform sedentary work. On appeal to the Sixth Circuit Court of Appeals, the claimant argued that the ALJ's reliance solely upon the Medical Vocational Guidelines (the grid) was error. The Sixth Circuit reversed and remanded the case to the district court. The Sixth Circuit reasoned that "in cases of unusual ability to sit or stand, a vocational expert should be consulted to clarify the implications for the occupational base." *Id*. at 499. Rather than conclude that a sit/stand option is tantamount to disability, the Sixth Circuit determined that in such situations, conclusory consultation of the grid is error and testimony from a vocational expert should be obtained.

Three years after *Wages*, the Sixth Circuit decided *Bradley*, 862 F.2d 1224. In *Bradley*, the Sixth Circuit discussed and explained *Wages*. The Sixth Circuit in *Bradley* rejected a Social Security claimant's argument that the holding in *Wages* automatically precludes a claimant from engaging in sedentary work if he must alternate between sitting and standing. The law in the Sixth

17

Circuit is that a Social Security claimant is not disabled and is not precluded from performing sedentary work simply based upon a need to alternate between sitting, standing and walking, if a vocational expert can identify jobs in the national economy that can be performed within the claimant's limitations. *Id.* at 1227; *accord Sharp v. Secretary of Secretary of Health & Human Services*, 9 F.3d 456390 (Table, text in 1993 WL 456390, * 5 (6th Cir. Nov. 5, 1993)); *Crawford v. Secretary of Health & Human Services*, 995 F.2d 1066 (Table, text in 1993 WL 205923, * 4 (6th Cir. June 11, 1993)); *Tideswell v. Secretary of Health & Human Services*, 869 F.2d 1493 (Table, text in 1989 WL 20595, ** 5-6 (6th Cir. March 3, 1989)); *Karlskin v. Bowen, Secretary of Health & Human Services*, 869 F.2d 1491 (Table, text in 1989 WL 13066, * 3 (6th Cir. Feb. 9, 1989)); *Pollock v. Secretary of Secretary of Health & Human Services*, 865 F.2d 1269 (Table, text in 1989 WL 295, * 3 (6th Cir. Jan. 4, 1989)); *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1002 (6th Cir. 1988); *Rose v. Astrue,* 2008 WL 2552252, * 3 (E.D. Ky. June 25, 2008); *Bennett v. Astrue,* 2008 WL 345523, * 5 (E.D. Ky. Feb. 7, 2008).

Stephens' case is readily distinguishable from *Wages*. In the case at bar the ALJ properly relied on testimony from a vocational expert. At the administrative hearing the ALJ asked the vocational expert to assume Stephens' vocational factors and assume that Stephens has the residual functional capacity to perform unskilled, sedentary work with the following additional limitations: she can only occasionally perform work at heights, or on ladders or scaffolds; and she can do no work involving the general public or requiring production quotas. The vocational expert testified about examples of entry level jobs in the regional economy (within a 100 mile radius) and in the national economy, respectively, which Stephens could perform based on this hypothetical question: office clerk (1000 and 75,000 jobs), information clerk (700 and 250,000 jobs), and order clerk (5000 and 70,000 jobs). The testimony of the vocational expert is substantial evidence that supports the

ALJ's finding. The Sixth Circuit's opinions in *Wages* and *Preston* do not require the ALJ and this Court to reach a different decision in Stephens' case.

**V.      Conclusion**

Plaintiff Stephens' objections to the Magistrate Judge's report and recommendation [Doc. No. 14] are **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) the Court **ACCEPTS and ADOPTS** the report and recommendation

Plaintiff Stephens' motion for judgment on the pleadings [Doc. No. 8] is **DENIED**. The defendant's motion for summary judgment [Doc. No. 10] is **GRANTED** pursuant to Fed. R. Civ. P. 56. The plaintiff's complaint shall be **DISMISSED WITH PREJUDICE** with each party to bear their own costs of this action. The administrative decision of the Commissioner of Social Security shall be **AFFIRMED**.

The Clerk of Court is **DIRECTED** to enter a final judgment in accordance with this memorandum and order.

SO ORDERED.

ENTER this the 26th day of August, 2010.

                    */s/ R. Allan Edgar*
                R. ALLAN EDGAR
             UNITED STATES DISTRICT JUDGE